The next case on for argument is Morrone v. The Pension Fund of Local No. 1. Good morning, Your Honor. May it please the Court. I'm Robert Libros for appellant Vincent Morrone. With me at council table is Edgar Pauk. With permission, I'd like to reserve three minutes for rebuttal. You may. This is the ERISA anti-cutback pension plan amendment case involving the rule of parity and the five-year rule. The district court in this case in ruling that the benefits that Mr. Morrone sought were attributable to future service, that's incorrect for two important reasons. That doesn't mean we're right, but the district court was wrong. The first reason is when Mr. Morrone was seeking a higher rate of benefit accrual for his prior service, the First Circuit in the Bonneau case, which we have in our brief, has expressly stated that that higher rate of benefit accrual is attributable to the prior service. That was the bank-to-hours case in which four pension plans combined and the plans had bank-to-hours in which if a person had more hours than necessary to qualify for a year of service, then they could put the extra hours in the bank and use it for a future year when they didn't quite . . . That's not, but the court expressed . . . I understand what your client is seeking is to have, I think I've got this right, have to work less time in order to catch up for the years that he was out. Yes. And that's going forward. Well, it's a higher rate of benefit accrual for his first 20 years of service is what and then $70 per hour for his 91 to 96 service. Those were the rates in effect when he left covered employment in 1996. When he began his hiatus in 1996, he had 27 credits and that would be $1,470? Yes, that's correct. But he's actually getting more than that now, right? He's getting $1,770 a month or he will get $1,770 a month. But the reason is . . . How is there a cutback? Benefit accrual is for a specific period of service, not . . . he worked three more years and when he came back, actually he's now completed the five. Those five years or whatever they are, three, four, five years, when he worked those years, that was under the amended plan. So it's hard for him . . . it's hard for you to argue that he had an expectation that he should . . . he knew that the terms had changed, right? When he came back, he did not know that the plan had amended out the five-year rule. He knew that the rates of benefit accrual for his current service were going to be higher. But it wasn't a secret that the plan had amended out the five-year rule? That's unclear. There were no separate plan amendments. When I asked for discovery for all plan amendments in between the restatements, I was told by opposing counsel that they'd made a search and there weren't any. It's unclear that there was any specific notice given as to any kind of reduction in the rate of benefit accrual or any change in the plan except for the summary which had deleted the five-year rule in the appropriate section of the summary. The points here that I'd like to press at oral argument are that this additional benefit fits the four corners of a retirement-type subsidy for three reasons. First, that the economic realities of the workplace suggest that the deal that was being offered under the five-year rule is the same deal that employers or plans offer when they offer an early retirement subsidy. For example, in the traditional early retirement subsidy area, the employer will tell the worker, here's your benefit for your per year of service. But if you give me more service up to a certain point, say 30 years, and help me and produce value for me either in profits for an employer or in a multi-employer plan, bring in more contributions for me, I will reward you by giving you a benefit of larger value for all your prior years of service. That is the same deal that's being offered here. The employer is the post-early retirement cases like Alcantara. The employee earned the benefit and it was just a matter of aging into the right age, into age 80 or age 90. That's correct. The employees had all qualified service. Roney hadn't qualified yet. He still had to come back and work after the amendment to get to that higher age. That's right, Judge. Why isn't that a significant distinction? Because the traditional, the 84 amendments to the Retirement Equity Act were motivated by courts not protecting early retirement subsidies under the cutback rule. How was this a subsidy? The appellee argues that it's not a subsidy, that it's actually the rate. It's the retirement rate itself that's being affected as opposed to something that would be paid on top of the normal retirement benefit so that, therefore, it is not a subsidy. How do you respond? When you have to work more years to qualify for the bigger benefit, that looks more like a consistent service. For example... So what do you want our holding to be? That the benefits that Mr. Moroney was offered in the 1994 plan, the opportunity to qualify for the current rates of benefit accrual for his prior years of service constitutes a doesn't have to be computed by actuarial principles. It can be a flat dollar payment as in a planned shutdown benefit. Second, the timing of the benefit can be either at or after normal retirement age, according to the IRS regulations. It does not have to be only at early retirement. And third, are the economic realities of the workplace. You're being offered the same deal as when you're being offered an early retirement subsidy. And so we would request... I see my time has expired. For now, I'll... Hold on a second. Has he now worked five years? Yes, he has. Yes, he has. At the time this suit began, had he worked five years? No, at the time the suit began, he'd... Well, he'd worked one year. He'd asked about his statute of limitations. He had to file suit within one year of when the claims process expired, and courts uphold that type of one-year rule. That's why the suit was filed when it was instead of now. He would have lost the right under the terms of the plan to sue. Seems like when it was filed, it was asking for an advisory opinion. Well, the statute... It was certainly possible that he wouldn't work even five years. The statute expressly provides that you have a right to bring an action to clarify your rights to benefits under the terms of the plan, in addition to seeking benefits due. That's 29 U.S.C. 1132a1b. The statute gives you that right. Whether or not it's, as you suggested, an advisory opinion, I believe may have been somewhat at issue in the Supreme Court Spokio case, but it was deferred. I don't believe that issue has arisen in this case, but the statute expressly authorizes that type of lawsuit. Thank you. Mr. Labros, excuse me, and you've reserved three minutes for rebuttal. Yes, Your Honor. Mr. Moss. May it please the court. My name is Franklin Moss, and I represent the Local 1 Pension Fund. With respect to the advisory opinion issue, we did initially in the district court take that position. At this point, he has, in fact, approved the five years, but I think that is significant because in his appeal to the trustees of the fund, he didn't argue any of the arguments he's making today. He made two arguments. One was that under the current plan language, he was entitled to the higher benefits, which he's now abandoned, and the second was that with one year of service, he was entitled to the higher benefit. Nowhere in his initial six-page letter, and it was a lawyer's letter from Mr. Labros, or the following year he sought reconsideration, a seven-page detailed letter, single-spaced and all that, was this five-year argument raised. And in fact, I think there's a good reason for that, because if you look at the language, and it's different and clearer than, let's say, a case like Langman v. Laub, which this court addressed the same issue. And that is, it says you're entitled to benefits if you return after five years under the terms of the plan and benefits at the time you leave, if you have your five years. That's what the language that Mr. Labros is relying on says. And indeed, if you look at 1970 dollars representing the 1470 from prior to his hiatus, and the 500 dollars he will now get as a result of the five years. So that even if all of his arguments were correct, our position is the plan is patently clear, unlike, let's say, the Langman v. Laub case, where it just said you get the benefits that were in effect then. He got the terms that he will be getting under the terms of the plan and the benefits. But let's go back to Mr. Labros' principle argument. His argument is that when he went on a hiatus in 1996, he had an expectation that he would be able to return and achieve a living pension within five years. That was his expectation at the time. And then the argument is that falls by the wayside because of the amendment. That's right. And there are plenty of cases today. But why isn't that a cutback? Why isn't that a cutback? Because this has to do with service and a discretionary amendment that both happened after his hiatus. So that all of the service, the five years, all happened after the plan amendment that changed the rule. So he had no expectation. And indeed, he did get the summary plan descriptions that set forth the rules. If he didn't read them, that may be the case. But this case was never litigated as a notice case, not in the district court, and it would not reasonably be so because he did get the notices that set forth the plan changes. But going back to the arguments being made, and it may be useful, I think, to look at the Langman v. Laub case, because this is actually a much easier case than that. And the site given to this Bono case, sort of a way to lead into that. The Bono case involved benefit improvements that were awarded over time, but prior to an amendment, and then subsequently, so the individual had an accrued benefit, and then it got taken away. And the argument that was made in the Bono case was that that's okay because this was an improvement adopted after the person had actually done the work. He didn't rely on it in doing the work. But the circuit there said, of course not. Once you have an accrued benefit, you can't take it away. And that's what Bono stands for. So now going... Your argument here is he did not have an accrued benefit. Exactly. His argument is, well, I had this expectation, I think, to use Judge Chin's word, and that is sort of like a benefit, and you took that away from me. I think that is the argument. That's where we are. I think that's right. And I think there's no authority for the principle that a reasonable expectation is binding. Indeed, people may be working for many years, and a plan will freeze the benefits completely. You had a reasonable expectation that your benefits would continue to accrue, but the courts have universally said, as so many plans, unfortunately, have done, it's okay to freeze the benefits completely, frustrating somebody's reasonable expectations completely. But let me go back to the Langman v. Loud case, because I think it's really illustrative. In the Langman case, there was what Mr. Libras would characterize as a promise that your benefits would be determined based upon when you last worked in employment. He started working, his benefit was $5 per year of service. He then had a hiatus, he came back, and at the time of a plan amendment that imposed one of these protracted absence rules, the benefit had gone up to $20. Then, the protracted absence rule was adopted by that plan's trustees, and ultimately, the final benefit went up to, I think, $50. But the court said, no, you're limited to the $20, because that's what your accrued benefit was at the time of your retirement. Not of your retirement, of the plan amendment. Now, in our case, you didn't initially have that promise, the promise that you get the benefit when you ultimately leave. Indeed, our plan has always had a protracted absence rule, and at one point, there was this He would then have been in the same position as the plaintiff in the Langman B. Loud case. That is, he would then have had, according to Mr. Libras, a promise that his final benefit would be based upon his last year of service. But in fact, that wasn't what this court ruled, what the district court ruled, and this court affirmed. Instead, he was entitled to the accrued benefit at the time of his hiatus, plus the additional credits that he's earned since. And that's the pension that he's entitled to, and it's our position that that is appropriate. What about the argument that this was a subsidy? I don't see in what sense it is. It's the plan rule as to what the benefit you get is. You get X benefit for your period before the hiatus. You get Y benefit for the period after the hiatus. And you can do an actuarial calculation now, assuming that the five-year rule applied, and it would be substantially higher, and the argument is that this is a retirement-type subsidy, retirement-benefit-type subsidy. So why is it not? Because there's no—it's not like an early retirement benefit, whereas if you go out early but you have 25 years, you get the equivalent to what you would have gotten when you reached age 65, and there's an increased benefit compared to what you would get at normal retirement age. And the regulations, when they talk about retirement subsidy, talk about as compared to what you would get at normal retirement age, and the benefit he's going to get at normal retirement age is indeed the 1970—unless he works more years, he'll get a higher benefit. Because the regulations talk about retirement subsidy in terms of the actuarial difference from the benefit at normal retirement age, and this is—there is no difference. Because a retirement subsidy would be something by which one would encourage early retirement, for example— For example— —by yielding a larger payout. That's right, or a planned closing benefit or something like that. Okay. Are there any other questions? Thank you, Mr. Wallace. Thank you. Mr. Libros. Your Honor, Judge Hall, I believe you were concerned before about an expectation, and perhaps that's all this was. In the traditional—and Judge Chinn—in the Alcantara case, it's true that the type of benefit there people could just age into. In other traditional subsidy cases, people are required to perform a specific number  The 30 and out was required. There's always the traditional, and then you get the early retirement subsidy. The right to the subsidy would be amended out of the plan after 25 years. The statute protects the right to work five more years of qualifying service to get the subsidy for the first 25 years when it's eliminated. It's not just an expectation. When it's in the plan, the Retirement Equity Act protects it as a right to get that subsidy, not just a mere—an expectation would be if I offer you a benefit, say next year, the rate of accrual is $200 per year. In January, it's for next year. And then come November, the plan has not had a very good year, and they change it, say, you know, next year we're only going to give you $100 like we originally intended. That was only an expectation because you had not yet performed any of next year's service for which you would have been compensated at $200 per month. That's what an—I'm sorry. That is what an expectation is. In the— How is this different? Because here, when he left, contrary to my brother's statements about the plan, it is not a model of clarity. And the district court determined that the five-year rule, when it replaced the hiatus rule, provided that you would get the final rates of accrual for your prior service. And then the five-year rule was amended out. It was not simply a benefit here and a benefit here. This is a subsidy— When he went out on hiatus— Yes. —he could not have predicted that—he did not know that the rates would go up at some point, right? This plan— In other words, he— Yes, and— It seems you want the higher rates, but you don't want the change in the amendment. The higher rates—the rates were going up constantly in the late 80s—in the 80s and 90s. They were $28 per year of service in 1983, and by 1990, they were $50. By 1996, they were $70 per year of service. They were going up. The plan was very healthy. In December 2011, in the record attached to Mr. Morrone's affid declaration in the reply is the plan's summary of material modifications and stating the plan is very healthy. Here are additional benefits. But to get back to—this is primarily a subsidy case. The form of the subsidy does not have to be an actuarial computation. It can be a dollar amount as in paid in a planned shutdown benefit, as we said in our brief in the IRS General Counsel's Memorandum of 1988. The timing of the benefit under the IRS regulations does not have to be at early retirement. The timing can be whenever the benefit is paid, either at normal or after normal retirement age. In the planned shutdown situation, if a plan shuts down and a worker is 67, he still gets the subsidy if it's in the plan of $100 per month, $200 per month per life. It doesn't have to be at early retirement. And third, this case is very similar to the traditional subsidy cases requiring extra service. Alcantara is not controlling, but the Retirement Equity Act's Senate report, which is in the special appendix, points out that the motivation for this protection of subsidies was based on promises that you get a bigger benefit for your prior service if you give us enough service, 30 years, for example. That's—and I see my time has expired, and thank you very much, Your Honor. Thank you. Thank you both. We'll reserve decision.